STEVEN H. STONE, Plaintiff, *v.* TIMOTHY F. ALLEN and Others, Doing Business under the Firm Name and Style of THOS. L. MANSON & Co., Defendants.

Supreme Court, Trial Term, New York County, November 20, 1936.

*Slade & Slade,* for the plaintiff.

*Hines, Rearick, Dorr & Hammond* [*Archie O. Dawson* and *C. Gilbert Miller* of counsel], for the defendants.

BLACK, J. This is an application by plaintiff to set aside the verdict of the jury in favor of the defendants and for a new trial.

The principal ground urged by plaintiff is that notwithstanding the fact that defendants claimed they had already in September, 1931, covered the *300* share short sale in question at the request of plaintiff, nevertheless defendants' Exhibit " B " shows that in December, 1931, plaintiff was charged a premium of one dollar and fifty-six cents for each of two successive days for the use of *200* shares of Steel borrowed to deliver under a short sale. The jury undoubtedly found, and the court is of the opinion, that this was a clerical error, and that the premium shown was applicable to 200 shares of Du Pont, and not to *200* shares of Steel.

The jury evidently believed that the *300* share short sales had been covered by defendants at plaintiff's request in September, 1931, five months before the January 1, 1932, statement (Exhibit " B ") of plaintiff's December transactions. If they believed the short sale had been covered by plaintiff's order, the jury could not have believed that a statement was correct which charged plaintiff with premium on *200* shares of stock borrowed to deliver under a *200* share short sale made in August and covered on the third day of September. If the plaintiff, as plaintiff claims, was still short *300* shares of Steel, he would not have at this late date been charged with a premium for the borrowing of only *200* shares to make delivery under the short sale.

Even though the plaintiff knew at the trial that Exhibit " B " contained what the court believes was this clerical error, no effort was made by plaintiff to trace the transaction through the trades of defendants other than to ask if the exhibit was correct. To say the least, it is a remarkable coincidence that the premium on the *200* share short sale of Steel was exactly the same as the premium on the Du Pont stock.

The defendant Allen did testify that there was no short sale of *300* shares or *200* shares of Steel on plaintiff's behalf after *the 4th* day of *September, 1931,* and before January, 1932, and that if there was any short sale of United States Steel outstanding or carried between September 4, 1931, and January, 1932, this would be reflected in the monthly statements sent plaintiff. Mr. Allen also testified that if there was such short sale of United States Steel carried as a short sale, there would be a premium charged against plaintiff on such stock which would be reflected on such monthly statements and that the character of the specific stock so carried short would be specified on said statement.

Counsel for the plaintiff fully urged to the jury the contention he now makes that the two entries of one dollar and fifty-six cents each were for premium incurred in short sale of 200 shares of Steel. The photostat of Exhibit " B " shows that it would have been difficult for the jury to have overlooked plaintiff's contention, because there is a very palpable pencil mark around the item of *200* shares upon which the premium appeared to have been charged for two separate days. The jury's finding on this matter is conclusive.

It must be borne in mind that plaintiff claimed that he was not bound by the confirmations and statements of account which he had received, so that he can hardly urge that defendant's whole case should depend upon the statement (Exhibit " B ") which the court is of opinion contained a clerical error.

The charge of the court analogized the measure of damages for covering a " short sale " without authority to the damages for unlawfully selling out a client who is " long " of stocks.

In *Markham* v. *Jaudon* (41 N. Y. 235 [1869]) the court held that where a " long " customer was improperly sold out, the measure of damages was the difference between the value of the stock at the time it was wrongfully sold and its value at the time of the trial, but this was found to be a harsh rule, and it was modified in the case of *Baker* v. *Drake* (66 N. Y. 518 [1876]) to be the difference between the value of the stock at the time of the improper sale and its value within a reasonable time after the " long " customer found out that it had been sold. The law in regard to unauthorized " covering " of short sales has undergone a similar evolution. The earlier cases of *Campbell* v. *Wright* (118 N. Y. 594 [1890]) and *Rogers* v. *Wiley* (131 id. 527 [1892]) held that the measure of damages for unauthorized " covering " was the difference between the price at which the " short " sale was " covered " and the price at the time when the customer ordered the broker to " cover." This principle was followed in the first appeal of *Barber* v. *Ellingwood* (135 App. Div. 549 [1st Dept. 1909]). However, in the second appeal of *Barber* v. *Ellingwood* (144 App. Div. 512 [1911]), the Appellate Division of this department held that the proper measure of damages in the case of an unauthorized " covering " of a " short sale " was the difference between the price at which the stock was bought in by the broker at the unauthorized " covering " and the lowest market price *within a reasonable time after the " covering " purchase*, thus analogizing the rule of damages in " short sales " to the rule in cases where " long " customers had been wrongfully sold out, and overruling the decision in the first appeal of *Barber* v. *Ellingwood*. In *Rosenthal* v. *Brown* (247 N. Y. 479 [1928]) the decision in the second *Barber* case (which is the most recent on the subject) was cited by the Court of Appeals, but no reference was made in that decision to *Barber* v. *Ellingwood* (135 App. Div. 549). This court regards this as tacit disapproval of the rule in the first *Barber* case, and approval of the rule established in this department in the second *Barber* case. The rule of damages established in *Barber* v. *Ellingwood* (144 App. Div. 512) is the correct rule. It was written by Mr. Justice SCOTT, who two years before in the first *Barber* appeal, wrote the minority opinion. (See, also, *Galigher* v. *Jones*, 129 U. S. 193 [1888].) The rule of damages charged by this court in the present action was not used by the jury, because they found for defendants, and thereby decided that there were no damages.

The court is of the opinion that there was no error in its charge as to ratification.

As the court believes the verdict was amply warranted, the motion to set aside the verdict and for new trial is denied.

Thirty days' stay and sixty days to make a case.