HEATH DRY GAS COMPANY, Respondent, *v.* BENJAMIN HURD et al., Appellants.

1. EXPRESS AND IMPLIED WARRANTY ON EXECUTORY CONTRACT. In an executory contract for the manufacture of goods to be delivered in the future, the law implies a warranty that the articles will be reasonably fit for the uses for which they are intended, and free from latent defects produced by the process of manufacture, and a party cannot secure the benefits of an express warranty by the use of words expressly stating the same obligations which the law implies.

2 THE SUFFICIENCY OF A COMPLAINT MAY BE ATTACKED ON A DEMURRER TO THE ANSWER. On demurrer to an answer, defendants properly attacked the sufficiency of the complaint, and it was held that the allegation, "Defendants agreed to construct carbureters for the plaintiff in lots as should be ordered by the plaintiff; that the said carbureters were to be constructed in a careful, workmanlike and skillful manner and in accordance with the plans and specifications which were furnished to the defendants by the plaintiff," did not sufficiently plead an express warranty, and, therefore, did not constitute a cause of action, since it only stated what the law implied without any express warranty. An allegation that certain articles were to be constructed "in accordance with the plans and specifications which were furnished to the defendants by the plaintiff" should be treated as a term of description and not as a warranty, and is not available for the purpose of sustaining the complaint.

*Heath Dry Gas Co.* v. *Hurd,* 124 App. Div. 68, reversed.

(Argued September 30, 1908; decided October 23, 1908.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the third judicial department, entered January 9, 1908, which affirmed an interlocutory judgment of Special Term sustaining a demurrer to the answer.

The following question was certified: "Does the complaint set forth facts sufficient to constitute a cause of action?"

The nature of the action and the facts, so far as material, are stated in the opinion.

*Harold Tappin* and *Adelbert J. Smith* for appellants. The demurrer to the answer subjects the complaint to an attack for insufficiency. (*Baxter* v. *McDonnell*, 154 N. Y. 432; *Lewis* v. *Booth*, 69 N. Y. 620.) The complaint does not set forth any express warranty. (1 Abb. Tr. Brief [2d ed.], 372, § 188; *Reed* v. *Randall*, 29 N. Y. 358; *Day* v. *Pool*, 52 N. Y. 416; *G. Mfg. Co.* v. *Allen*, 53 N. Y. 515; *C. I. Co.* v. *Pope*, 108 N. Y. 232.) The complaint does not set forth any implied warranty which survives the acceptance of the goods, and the retention and repairing thereof after discovery of defects. (*Reed* v. *Randall*, 29 N. Y. 358; *Gaylord Mfg. Co.* v. *Allen*, 53 N. Y. 515; *Coplay Iron Co.* v. *Pope*, 108 N. Y. 232; *Smith* v. *Coe*, 170 N. Y. 162; *Gurney* v. *A. & G. W. Ry. Co.*, 58 N. Y. 358; *I. W. Co.* v. *Garvan*, 92 App. Div. 187; 181 N. Y. 573; *Hargous* v. *Stone*, 5 N. Y. 73; *Hart* v. *Wright*, 17 Wend. 274; *Gentilli* v. *Starace*, 133 N. Y. 140.)

*Edgar T. Brackett* and *Hiram C. Todd* for respondent. The complaint states a good cause of action, and the question certified should be answered in the affirmative. (Code Civ. Pro. § 481; *F. C. Co.* v. *Metzger*, 118 N. Y. 260; *Bull* v. *Bath Iron Wks.*, 75 App. Div. 380.)

HISCOCK, J. The appellants are seeking to defend against the attack made by plaintiff's demurrer on their answer, as concededly they may do, by attacking in turn the sufficiency

of the latter's complaint, and the questions thus raised are the only ones submitted to us on this appeal.

The action was brought to recover damages because as claimed the appellants had not fulfilled their obligations under an executory contract with respondent for the manufacture of carbureters, complaint being made as to the quality of those which were supplied. Respondent accepted and has never returned the goods thus manufactured for it, and while the learned Appellate Division thought that notwithstanding this acceptance and retention of the goods its complaint might be sustained if necessary as alleging a cause of action on an implied warranty, the counsel for the respondent on the argument before us expressly conceded that it must be sustained, if at all, as alleging a cause of action on an express warranty, which survived acceptance and failure to return after discovery of the defects. Therefore, the sole question has become, does the complaint allege an express warranty covering the defects in the carbureters, and the material allegations bearing on this question are as follows:

"That on or about the —— day of April, 1906, the plaintiff and the defendants entered into a contract whereby the defendants agreed to construct carbureters for the plaintiff in such lots as should be ordered by the plaintiff; that the said carbureters were to be constructed in a careful, workmanlike and skillful manner, and in accordance with the plans and specifications which were furnished to the defendants by the plaintiff, and at the prices quoted by the defendants to the plaintiff. * * * That the defendants entered upon the performance of the aforesaid work under the said contract, and did construct 151 carbureters for the said plaintiff; and the said plaintiff, relying upon the said contract, and believing that the said carbureters were constructed in a careful, workmanlike and skillful manner, and not otherwise, received the said carbureters under the terms of the said agreement; * * * that said carbureters failed to do the work for which they were intended; that plaintiff was unable to see the defects in said carbureters at the time they were deliv-

17

ered * * * ; that plaintiff did not learn of said defects in said carbureters until it had sold a great many as aforesaid. * * * That by carelessness, negligence, unskillfulness and poor workmanship on the part of the defendants and their servants, all of the said carbureters constructed by them have been improperly, carelessly, unskillfully and negligently constructed, and made useless and valueless to the plaintiff herein, and solely because of such careless, improper, unskillful, unworkmanlike construction the said carbureters have failed in all respects to conform to the conditions of said agreement and to answer the purpose and to do the work intended to be done by them as provided in said agreement."

Amongst all of these allegations, the specific ones of course upon which the respondent must rely as setting forth an express warranty are those that "the defendants agreed to construct carbureters for the plaintiff in lots as should be ordered by the plaintiff; that the said carbureters were to be constructed in a careful, workmanlike and skillful manner and in accordance with the plans and specifications which were furnished to the defendants by the plaintiff."

It is well settled, as contended by counsel, that no specific words are necessary to constitute an express warranty, and that this complaint is not to be deemed insufficient because it does not use some particular formula. If the requirements essential to an effective contract of express warranty are otherwise satisfied by the language which has been used, that effect will not be denied because the word "warranty" has been omitted.

We do not think that the allegation that the carbureters were to be constructed "in accordance with the plans and specifications which were furnished to the defendants by the plaintiff," helps to sustain respondent's theory. The form and purport of these plans and specifications is nowhere disclosed by the complaint, but we shall assume that they were of the usual character and served to describe and identify the articles which were to be manufactured by the appellants. No importance seems to be attached to them in con-

nection with the question now under consideration and there is no allegation in the complaint as we understand it that appellants defaulted in respect to them. But, aside from this, while there may have been some difference of opinion on the subject, it is the better rule " to treat such words (that is, terms of description of the articles to be sold or manufactured) as part of the contract of sale descriptive of the articles sold and to be delivered in the future and not as constituting that collateral obligation which sometimes accompanies a contract of sale and known as a warranty." (*Carleton* v. *Lombard, Ayres & Co.*, 149 N. Y. 148; *Coplay Iron Co.* v. *Pope*, 108 N. Y. 232, 236.)

Respondent's claim, therefore, of an express warranty must substantially rest upon the agreement " that the said carbureters were to be constructed in a careful, workmanlike and skillful manner." We shall assume that the words of agreement in form were equivalent to those of warranty.

In this executory contract for the manufacture of goods to be delivered in the future, the law implied a warranty that the articles to be manufactured should be reasonably fit for the purposes for which they were intended and that they should be free from latent defects produced by the process of manufacture. (*Maurer* v. *Bliss*, 6 N. Y. S. R. 224; affirmed, 116 N. Y. 665; *Hoe* v. *Sanborn*, 21 N. Y. 552; *Gutwillig* v. *Zuberbier*, 41 Hun, 361; *Kellogg Bridge Co.* v. *Hamilton*, 110 U. S. 108.)

The obligations thus implied are quite as broad as and fully equivalent to the obligations created by the words relied on as constituting the express warranty. This being so, we think that it is settled that a party cannot in such a case as this build up and secure the benefits of an express warranty simply by using words expressly stating the very obligations which the law implies without such words.

*Reed* v. *Randall* (29 N. Y. 358) involved the consideration of an executory contract for the sale of a growing crop of tobacco. The contract expressly provided that the tobacco was " to be delivered well cured and in good condition," and

it was held that this agreement would not be interpreted as an express warranty because it created no greater or different obligation than the law implied. It appeared in that case that the vendee accepted the property, and some time thereafter brought action to recover damages because of its being improperly cured and in bad condition and in violation of the provisions of the agreement, and they were non-suited because of their failure to return the tobacco after discovering its defects, as they were compelled to do if there was no express warranty. The court, in holding that proper disposition of the case had been made, said : " This conclusion, I think, was right. It is not claimed to be otherwise, unless there was a warranty that the tobacco when delivered should be well cured and in good condition. But the stipulation in respect to the quality and condition of the article when delivered constituted no express warranty. The contract was executory, for the sale of a growing crop of tobacco, to be delivered the spring following, well-cured and in good condition. The article bargained for and to be furnished in the future was a merchantable crop of tobacco ; this was what the vendor agreed to sell, and the vendee to purchase. It was the sale of a particular thing by its proper description merely ; and the descriptive words used for defining the thing agreed to be sold were of the substance of the contract, not collateral to the main object of it. * * * In an executory contract for the sale of personal property, the law implies that the article when furnished shall be of merchantable quality. * * * In legal effect, therefore, the agreement as to which the breach was alleged was the same as the law would imply, in the absence of words of express contract. It would be established upon proof of a contract to sell and deliver the tobacco at a future time, and without proof of express words between the parties, and if express words were used between the parties, yet, superadding to the terms of a contract words expressing an obligation which the law implies does not change the nature or extent of the obligation or the remedy upon it."

Whatever may be said for or against the principle thus enunciated as formulating one amongst other somewhat refined rules governing the subject of warranties, it seems to have been recognized and to have passed without criticism in later cases. (*Foot* v. *Bentley*, 44 N. Y. 166, 170; *Day* v. *Pool*, 52 N. Y. 416, 420; *Gaylord Mfg. Co.* v. *Allen*, 53 N. Y. 515, 518.)

In the latter case an agreement was made to manufacture some castings which were "to be of the best quality and suitable to the purposes designed." The only objection to the castings when supplied was that they were not well or sufficiently annealed and were not for that reason suitable for the purposes for which they were designed. The question was with reference to a warranty and the court said : "The law would imply precisely that which the defendant's claim made a part of the express contract. This was an executory contract for the manufacture and sale of goods. * * * A contract to manufacture and deliver an article at a future day carries with it an obligation that the article shall be merchantable or, if sold for a particular purpose, that it shall be suitable and proper for such purpose. * * * Incorporating into the agreement the obligation which the law implies would superadd nothing to the contract, or vary its nature or affect the remedy upon it. * * * Whatever agreement there was, whether expressed or implied, was a part of the contract, and was not a special warranty or agreement collateral to it."

We do not perceive any principles which distinguish the cases cited from the present one. The burden of respondent's complaint is that the articles supplied to it were unfit for the purposes intended and valueless because of latent defects, which arose in the process of manufacture, and it bases this complaint upon an express agreement to manufacture the goods in a skillful and workmanlike manner which would have avoided these defects. But, as we have seen, the law implied the very obligation which is invoked against the appellants that the carbureters should be suitable for the purposes

intended and that they should be free from defects arising in the process of manufacture, just as in the *Reed* case the law implied an obligation that the tobacco should be free from defects arising in the process of curing, and as it was held in that case and in the *Gaylord Manufacturing Company* case that a vendee cannot change the nature or extent of an obligation which the law implies or the remedy upon it by adding to the terms of a contract words expressing such obligation, so we think it must be held in this case.

The orders appealed from should be reversed and demurrer overruled, with costs in all courts, with leave to plaintiff to serve an amended complaint within twenty days on payment of costs.

The question certified to us should be answered in the negative.

CULLEN, Ch. J., EDWARD T. BARTLETT, HAIGHT, VANN and CHASE, JJ., concur; WERNER, J., dissents.

Orders reversed, etc.